UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
BRIAN BLISS, and or other similarly situated
current and former laborers,

                        Plaintiff,                        **MEMORANDUM**
                                                           **AND OPINION**
          -against-                            CV 19-353 (LDH)(AYS)

JEREMY PATTERSON, GREGORY
PATTERSON, CHARLIE JOHNSON,
DUCKY JOHNSON HOME ELEVATION, LLC,
and CHARLIE JOHNSON,

                        Defendants.
-------------------------------------------------------------X
**SHIELDS, Magistrate Judge:**

      Plaintiff, Brian Bliss ("Plaintiff" or "Bliss"), commenced this action, on behalf of himself and others similarly situated, pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 206, 207, and 216(b), and the New York Labor Law ("NYLL") Article 19 §§ 633, 652, NYLL Article 6 §§ 190 et seq. The case was commenced on January 17, 2019. DE [1]. Named as defendants are individual defendants Jeremy Patterson and Gregory Patterson (collectively the "Pattersons"), individual defendant Charlie Johnson ("Johnson") and corporate defendant Ducky Johnson Home Elevations, LLC ("Ducky Johnson" or the "Corporate Defendant").[1]

      Plaintiff seeks, on behalf of himself and a proposed collective, overtime compensation and other damages. Presently before the Court is Plaintiff's motion to have this matter proceed

---

[1] On September 18, 2020, the Clerk of the Court noted the default of the Pattersons. DE [24]. On October 7, 2020, the parties stipulated to vacating those defaults, DE [26], and this Court thereafter extended their time in which to answer until November 6, 2020. The docket does not reflect the answer of these Defendants, nor any attempt to seek additional time. The present motion papers state that the motion is submitted on behalf of all Defendants.

1

conditionally as a collective action, pursuant to 29 U.S.C.§ 216(b). In the event that this Court grants Plaintiff's motion for conditional certification, Plaintiff seeks approval of a form of notice advising members of the collective of their right to opt-in to this action and authorizing the sending and/or posting of notice of the collective action. Defendants oppose the motion in its entirety. For the reasons set forth below, Plaintiff's motion to proceed as a conditional collective action is denied.[2]

## BACKGROUND

I.  Facts Considered in the Context of this Motion

The facts summarized below are drawn from the Complaint and the submissions of the parties in connection with the present motion. In support of the motion, Plaintiff relies on the allegations set forth in his Complaint, DE [1], his affidavit, DE [29], Memorandum of Law, DE [29-1], and a Reply Memorandum of Law, DE [29-3]. In response, Defendants submit a Memorandum of Law, DE [36], and the Declaration of Defendant Johnson. DE [37].

II.  The Parties and the Factual Allegations of the Complaint

  A.  Plaintiff Brian Bliss

Plaintiff Brian Bliss is an individual who resides in this District. Information about Bliss, the work he alleges to have performed, and the way in which he was paid, is drawn from the Complaint as well as his affidavit.

To characterize the Complaint as rife with typographical errors is an understatement. While Plaintiff's affidavit states that he was a driver and construction laborer, his Complaint

---

[2] Federal law permits "a magistrate judge to hear and determine any pretrial matter pending before the court," 28 U.S.C. § 636(b)(1)(A), including a motion for conditional certification of a collective action, which is only a "preliminary determination" and not dispositive. Summa v. Hofstra Univ., 715 F. Supp. 2d 378, 383-84 (E.D.N.Y. 2010).

begins by stating that this case "is a civil action brought by Plaintiff(s) and all similarly situated *nurses and technicians . . . .*" Compl. ¶ 1, DE [1] (emphasis added). The pleading goes on to state that "Plaintiff was *at all times a nurse's aide*." Id. ¶ 32 (emphasis added). As to illegal practices, Plaintiff's complaint states that "Defendants have a practice and procedure of compelling employees to pay monies originally paid to the affected employees directly *to other concierge staff for hours other concierge staff* works instead of the original on shift employee." Id. ¶ 31 (emphasis added). This practice is alleged to be in contravention of the New York Labor Law's requirements regarding "the procedure that must be followed in order to deduct wage overpayments." Id. ¶ 31.

The most telling error in the Complaint is the entity named for service thereof, identified as "Niranjan K. Mittal, Physical PLLC." Compl. at p. 12. This final error makes clear that the Complaint was copied and pasted from a different lawsuit commenced by Plaintiff's lawyer, that is no longer pending in this District. That lawsuit is Rhoden v. Mittal, Docket No. 18-6613 (E.D.N.Y. 2018) (LDH/SJB). The cases are similar in that Plaintiff in Rhoden also sought conditional certification of a class of vaguely denominated workers including "auto body workers and mechanics" in a case brought on behalf of nurses and technicians. See Rhoden v. Mittal, No. 18-6613 (E.D.N.Y. 2018) (LDH/SJB) (docket entry No. 38) (referred to in Rhoden v,. Mittal, 2020 WL 8620716 (E.D.N.Y. Oct. 26, 2020)).

In any event, ignoring Plaintiff's allegations about nurses, nurse's aides, technicians, and concierge staff (which Plaintiff has nowhere sought to correct by way of an amended pleading or explanation) and giving Plaintiff the benefit of relying on his affidavit to set forth the facts he wishes the Court to consider, the Court turns to discuss the allegations that apply to Plaintiff's situation.

Bliss states that he was hired by the Pattersons in 2014 "to drive commercial rigs to job sites" and also to perform demolition work. Declaration of Brian Bliss ("Bliss Decl.") ¶¶ 5-6, DE [29]. He states he was employed by Ducky Johnson for approximately 15 months from October 24, 2014 through January of 2016. Id. ¶ 7. Bliss identifies the Pattersons as his supervisors, but also states that he was occasionally supervised by Charles Johnson, when Johnson would come to New York from Louisiana. Id. ¶ 11.

Bliss is particular in his affidavit as to the way in which he was paid. Thus, he states that he was paid at an hourly rate of pay of $20.00. Bliss Decl. ¶ 14. He also states that he refused to be paid on a per diem or weekly basis, and insisted on being paid by check, and not in cash. Id. ¶ 14, n.3. Bliss is explicit in contrasting his hourly pay with that of "per day" rates "which was how Ducky Johnson paid its employees." Id. at n.3. As to his claim for unpaid wages, Bliss states that while he worked 14 hours days (from 6:00 AM to 8:00 PM) he was never paid overtime wages of one and one-half times his rate of pay. Id. ¶¶ 13, 15. Bliss explains that he arrives at his twelve-hour work day by beginning the daily calculation at 6:00 AM, when he entered his vehicle. He states that he would then proceed to pick up other workers and take them to the job site. Those workers began their work days at 8:00 AM. Id. ¶ 25, n.8. As to those other workers, Bliss states that they worked twelve-hour days from 8:00 AM to 8:00 PM. Id. ¶ 25. Bliss also states that he personally saw them work ten-hour days from 9:00 AM to 7:00 PM. Id. ¶ 26. Despite the fact that Bliss was doing the driving he states that he also participated in demolition and other work, alongside those who he seeks to include in his proposed FLSA collective. See id. ¶¶ 23; 31.

Bliss relies solely on his affidavit in support of the present motion. While no other members of the proposed collective have submitted affidavits, Bliss refers specifically to four co-

4

workers in support of his motion. These workers are referred to by the first names of Benny, Nino, Otto and Christian. Bliss does not know their surnames, and, as noted, none have submitted affidavits. Nor have any chosen to opt-in to this action since its inception in 2019. While Bliss is vague as to details of conversations with his co-workers, he is crystal clear that his co-workers, unlike Bliss, were paid on a per diem basis, getting their weekly earnings every Friday in cash. Unlike Bliss, these co-workers were not paid an hourly wage and were not paid by check. Bliss states that his information regarding how his co-workers were paid was obtained during conversations held at some point between 2014 and 2015. During this time period, Bliss learned that Benny, Nino and Otto were paid at the rate of $200 per day, and that their earnings were paid on Fridays. completely in cash. Bliss Decl. ¶ 27. Bliss states that he drove co-worker Christian in 2014-2015 and that Christian was paid at a daily rate of $175, in cash. Christian, who is stated to have had a drug problem, was fired in 2015. Id. ¶ 30. Bliss believes that his co-workers were never paid overtime wages, despite that fact that they worked twelve-hour days. Id. ¶ 27. Bliss concludes that, like him, his co-workers were not paid wages in accord with Federal and State law. Id. ¶ 27. Additionally, Bliss states that, like him, his co-workers never received a "wage theft notice" nor a "proper statement of wages." Id. ¶ 28.

B. <u>Defendants</u>

Defendants are the Pattersons, Charles Johnson and corporate defendant Ducky Johnson. Information about these Defendants is drawn from the Complaint, the Bliss affidavit and the affidavit of Charles Johnson, a Ducky Johnson Employee. In certain respects, that are not determinative to the present motion, the facts set forth by Charles Johnson differ from those stated by Bliss.

5

Ducky Johnson is a company that has subcontracted work to be performed in New York. Charles Johnson is a Ducky Johnson employee who lives in the State of Florida. Declaration of Charlie Johnson ("Johnson Decl.") ¶ 10 , DE [37]. He has supervised employees throughout the United States. Id. ¶ 2. Johnson's declaration states that Ducky Johnson employed the Pattersons to help lead certain projects in New York "for a brief period of time ending in April 2016." Id. ¶ 4. Johnson has reviewed Ducky Johnson's employment and payroll records. He states that those records reveal that Plaintiff Bliss was employed by Ducky Johnson for approximately five weeks, from approximately September 2015 through October 2015. Id. ¶ 6. This five-week time period is at odds with the time period alleged by Bliss in his affidavit, where he states that he worked for the Pattersons (who are alleged to have been employed by Ducky Johnson) for an approximately fifteen-month period beginning on October 24, 2014 and ending on January 29, 2016. This time period would encompass the five- week time period of employment with Ducky Johnson confirmed by Johnson. In any event, according to Johnson, his review of Ducky Johnson's records show that Bliss worked "about 19 days over this five-week period" and that "he earned $3,480 in wages." Id. ¶ 7. Johnson further states that Bliss worked at job sites in New York and that his "work duties primarily consisted of driving trucks" and that he "primarily drove for Gregory Patterson." Johnson states that he is not aware of Bliss reporting uncompensated hours. During the time when Bliss was employed by Ducky Johnson, Johnson states that he visited New York "on one or two occasions." Id. ¶ 10. Johnson is unaware of Ducky Johnson employees being required to pick up other employees, and that he has no knowledge of how the Pattersons paid their employees. Id. ¶¶ 11-12. Johnson does know that on various job sites "other workers were present who were not Ducky Johnson employees,

6

including employees of contractors who worked on foundation issues and termite control." According to Johnson, these workers "were not Ducky Johnson employees." Id. ¶ 13.

III.     Claims Alleged in the Amended Complaint and the Proposed Collective

Plaintiff's Complaint sets forth four causes of action. The first cause of action seeking payment of unpaid overtime wages, is the only Federal claim, and is alleged pursuant to the FLSA. Plaintiff's remaining claims are alleged pursuant to the New York Labor Law. These claims allege failure to pay overtime wages, as well as failure to provide notices required by New York State law.

Plaintiff seeks to conditionally certify a collective under the FLSA. The proposed collective (as stated in Plaintiff's proposed notice to members of the collective) consists of laborers engaged in "demolition, excavation and repairing of properties and constructions sites at Ducky Johnson Home Elevation, LLC Jeremy Patterson, Gregory Patterson, Charlie Johnson, at any time from April 3, 2013 through the present." DE [29] at p. 41[3] (Exh. 3). The proposed collective does not include drivers. The time period for notice includes those employed by Defendants for a six-year period prior to the present. As such, it reflects the New York State law statute of limitations under the NYLL, and not the statute that applies to the most generous interpretation of the FLSA, which is three years.

IV.     Defendants' Opposition to the Motion

Defendants oppose Plaintiff's motion in its entirety.  They argue that Plaintiff's own papers show that his situation is not similar to those included in the collective he seeks to

---

[3]     For ease of reference, page numbers for exhibits referenced herein are numbers assigned to pages on electronically filed documents, and not to the underlying documents themselves except for page numbers referenced in transcripts.

7

represent. Defendants also argue that Plaintiff's definition of the proposed collective is inconsistent and overly broad.

Having set forth the parties' general positions and described their supporting documentation, the Court turns to the merits of the motion.

## DISCUSSION

I.     Conditional Collective Action Certification: Legal Principles

The FLSA imposes liability upon employers that violate the statute's minimum wage and overtime compensation provisions. See 29 U.S.C. §§ 206-207. Section 216(b) of that statute ptovides an employee with a private right of action to recover overtime compensation and/or minimum wages on behalf of himself, as well as other similarly situated employees. Such similarly situated employees may become parties to an FLSA action upon giving consent in writing to become parties, which consent is filed in the court in which the action is brought. See 29 U.S.C. § 216(b); Valerio v. RNC Indus., LLC, 314 F.R.D. 61, 65 (E.D.N.Y. 2016).

Courts within the Second Circuit apply a two-step analysis to determine whether an action should be certified as an FLSA collective. See Mongiove v. Nate's Corp., No. 15-CV-1024, 2016 WL 590460, at * 1 (E.D.N.Y. Feb. 11, 2016). First, the court determines whether the proposed class members are similarly situated with respect to the alleged FLSA violations. See Myers v. Hertz, 624 F.3d 537, 554-55 (2d Cir. 2010); Wang v. Shun Lee Palace Rest., Inc., No. 17-CV-0840, 2018 WL 3155835, at *3 (S.D.N.Y. June 28, 2018); Jin v. Shanghai Original, Inc., No. 16-cv-5633, 2018 WL 1597389, at *5 (E.D.N.Y. Apr. 2, 2018); Rubery v. Buth-Na-Bodhaige, Inc., 569 F. Supp. 2d 334, 336 (W.D.N.Y. 2007). If the court decides the similarity question in the affirmative, appropriate notice is sent and members of the collective may thereafter "opt-in" by consenting in writing to be bound by the result of the suit. See

8

Sultonmurodov v. Mesivta of Long Beach, No. 15-CV-1654, 2015 WL 9273948, at *2 (E.D.N.Y. Dec. 17. 2015); Rubery, 569 F. Supp. 2d at 336; see also 29 U.S.C. § 216(b). The second step, which typically occurs after the completion of discovery, requires the court to make renewed factual findings as to whether the class members are actually similarly situated. See Rosario v. Valentine Ave. Discount Store, Co., 828 F. Supp. 2d 508, 514 (E.D.N.Y. 2011); Bifulco v. Mortgage Zone, Inc., 262 F.R.D. 209, 212 (E.D.N.Y. 2009). "At that juncture, the court examines the evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff." Bifulco, 262 F.R.D. at 212 (quotations and citations omitted). In the event that they are not, "the court will decertify the class, the claims of the opt-in plaintiffs will be dismissed without prejudice, and the class representatives may proceed to trial on their individual claims." Id. (quoting Rubery, 569 F. Supp. 2d at 336); see also Jin, 2018 WL 1597389, at *5.

The instant motion concerns only the first step, i.e., whether the proposed opt-in members are "similarly situated" such that conditional certification should be granted. At this stage, "the evidentiary standard is lenient," Castillo v. Perfume Worldwide Inc., No. 17-2972, 2018 WL 1581975, at *3 (E.D.N.Y. Mar. 30, 2018) (quoting Bifulco, 262 F.R.D. at 212), and "plaintiffs need only make 'a modest factual showing sufficient to demonstrate that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" Myers, 624 F.3d at 555 (quoting Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); Trinidad v. Pret A Manger (USA) Ltd., 962 F. Supp. 2d 545, 552 (S.D.N.Y. 2013).

Importantly, the issue of "similarly situated" refers not to similarity of job duties, but to similarity in pay structure. Thus, while similarity in pay structure is required, courts routinely reject attempts to limit certification based on alleged dissimilarity of job function. See, e.g., Ritz

9

v. Mike Rory Corp., No. 12 CV 367, 2013 WL 1799974, at *2 (E.D.N.Y. Apr. 30, 2013) (rejecting limiting conditional class to bartenders and instead, including all tipped service workers in conditional class). Additionally, it is well-recognized that the burden at the conditional certification stage is so low that Plaintiff's lone affidavit setting forth a common payment scheme may suffice.  See Sultonmurodov, 2015 WL 9273948, at *2.

II.     The Motion for Conditional Certification is Denied

Defendants oppose the motion on the ground that Plaintiff's submission fails to sustain even the limited burden of proof necessary for notice of a collective action to be sent, arguing that Plaintiff is not similarly situated to other putative FLSA collective members and that Plaintiff has not demonstrated a common unlawful compensation policy.  The Court agrees.

Plaintiff is correct when he notes that the showing required at this stage of the proceedings is "modest." However, Plaintiff must make some factual showing that he and fellow non-exempt employees were "victims of a common policy or plan that violated the law." Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010) (quotations omitted); see also Zheng v. Good Fortune Supermarket Grp. (USA), Inc., No. 13-CV-60, 2013 WL 5132023, at *4 (E.D.N.Y. Sept. 12, 2013) ("The court must find some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims of particular illegal practices.) (quotations and citations omitted)).

Plaintiff's submission fails to make even the modest showing required to support conditional certification. That is because Plaintiff's own affidavit states with certainty that he was not subject to the same pay structure as others. There is thus no question that with respect to pay practices, Bliss was not similarly situated to those he seeks to include in his collective. While Plaintiff was paid at an hourly rate and received his pay in the form of a check, all of the

10

others he refers to were paid at a set daily rate, and in cash. Thus, Bliss fails to demonstrate that he and the other employees were victims of a common policy or plan that violated the law. Even accepting that neither Plaintiff nor his co-workers were paid overtime wages, this fact alone, does not render Plaintiff similarly situated to those he seeks to represent. At most, Plaintiff was a bystander to employment practices, different to those that applied to him, that he thinks were unlawful. This is not enough to support conditional certification.

While Plaintiff's statements regarding pay practices are alone fatal to his motion the Court notes that his allegations regarding dates of employment also weigh heavily against collective certification under the FLSA. Plaintiff refers to the applicable statute of limitations as six years. It is not. While the FLSA has a three-year limitations period for willful violations, it is only Plaintiff's claims under the NYLL that are subject to a six-year statute of limitations. See 29 U.S.C. § 255(a); N.Y. Lab. Law § 663(3). Were this Court to have granted the motion for collective certification it would have exercised its discretion and required only a three year notice period, in accord with the "growing trend in this district . . . ." Aleman-Valdivia v. Top Dog Plumbing & Heating Corp., No. , 2021 WL 4502479, at *6 (E.D.N.Y Sept. 30, 2021) (quoting McBeth v. Gabrielli Truck Sales, Ltd., 768 F. Supp. 2d 396, 400 (E.D.N.Y. 2011)) (additional citation omitted).

As to Plaintiff's claims, this case was commenced on January 17, 2019. The three year statute of limitations that applies to willful violations of the FLSA renders timely only those claims arising by January 17, 2016. While Plaintiff states that he worked until January 29, 2016, none of the conversations with the co-workers referred to in his affidavit took place within three years prior to filing of the Complaint. All took place during 2014-2015 and refer to payments made during that time period. While the dates of employment for Benny, Nino and Otto are not

stated, Christian is said to have been fired in 2015. Thus, even under the most generous interpretation of the FLSA, none of the members of the proposed collective have claims that are timely. Plaintiff's FLSA claims, if they go forward, are barely so. Thus, even Plaintiff's last date of employment - January 29, 2016 (which is denied by Defendants who state that Bliss worked only until October of 2015) renders only a small portion of his FLSA claims timely.

In summary, Plaintiff fails to make even the modest showing required under law for conditional certification of a FLSA collective.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for conditional certification as an FLSA collective action pursuant to Section 216(b) of the FLSA is denied.

**SO ORDERED:**

Dated: Central Islip, New York
February 22, 2022

　　　　　　　　　　　　　　　　　　 /s/ Anne Y. Shields
　　　　　　　　　　　　　　　　　　Anne Y. Shields
　　　　　　　　　　　　　　　　　　United States Magistrate Judge